DAVID W. SCOFIELD - 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone:   (801) 322-2002
Facsimile:    (801) 912-0320
Email:          dws@psplawyers.com

**[Additional counsel on signature pages]**
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SHAHAM MAHABADI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** ) ) |
| v. | ) **JURY TRIAL DEMANDED** ) ) |
| OVERSTOCK.COM, INC., PATRICK BYRNE, and JONATHAN E. JOHNSON, | ) Case No. 2:18-cv-00290-DBP ) Honorable Dustin B. Pead ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Shaham Mahabadi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Overstock.com, Inc. ("Overstock" or the "Company"), analysts'

1

reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Overstock securities between August 3, 2017 and March 26, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Overstock is an online retailer that offers discounted brand-name merchandise for sale over the internet. In late 2014, the Company formed a wholly-owned subsidiary, Medici Ventures ("Medici"), as part of its initiative to develop and advance blockchain technology. Medici oversees a portfolio of blockchain technology and fintech businesses, which includes tZERO. In December 2016, the Company issued publicly traded blockchain preferred shares of Overstock.com, Inc.

3. Founded in 1997, the Company was formerly known as "D2-Discounts Direct" and changed its name to "Overstock.com, Inc." in October 1999. The Company is headquartered in Midvale, Utah, and its stocks trade on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "OSTK."

4. In October 2017, Defendants announced that they planned to raise up to $500 million in a "coin offering," consisting of sales of new digital coins for projects based on the blockchain technology of the digital currencies Bitcoin and Ethereum. These representations drove

the price of Overstock from $16.45 per share, on August 3, 2017, to a high of $86.90 per share, on January 8, 2018, an increase of more than 500% in five months.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Overstock's coin offering was highly problematic and potentially illegal; (ii) the Company's Medici business was hemorrhaging money; and (iii) as a result of the foregoing, Overstock's public statements were materially false and misleading at all relevant times.

6. On March 1, 2018, Overstock announced that the SEC had requested information about its initial coin offering. The Company's filing with the SEC, attached as Exhibit 99.1 to Form 8-K, stated in relevant part:

> In February 2018, the Division of Enforcement of the SEC informed the Company that it is conducting an investigation in the matter Re: Overstock.com, Inc. (NY-9777) and requested that the Company voluntarily provide certain documents related to the Offering and the Tokens in connection with its investigation. The Company is in the process of responding to this document request and will cooperate with the SEC in connection with its investigation.

7. On this news, Overstock's share price fell $2.65, or 4.38%, to close at $57.75 on March 1, 2018.

8. On March 15, 2018, post-market, the Company filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K"). In the 2017 10-K, the Company provided an update on the SEC probe, stating in relevant part:

> In February 2018, the Division of Enforcement of the SEC informed tZERO and subsequently informed us that it is conducting an investigation and requested that we and our affiliates, including Medici Ventures and tZERO voluntarily provide certain information and documents related to tZERO and the tZERO security token offering in connection with its investigation. We are in the process of responding to these document requests and intend to cooperate fully with the SEC in connection

3

with its investigation, which will require the time and attention of tZERO and our personnel, and may have an adverse effect on our ability to focus attention on our businesses and our ability to raise capital. In addition, the investigation could result in a delay of the tZERO security token offering, negative publicity for tZERO or us, and may have a material adverse effect on us or on the current and future business ventures of tzero.

9. On this news, Overstock's share price fell $2.50, or 5.18%, to close at $45.70 on March 16, 2018.

10. Then, on March 26, 2018, post-market, Overstock announced that it planned to offer 4,000,000 shares of its common stock in an underwritten public offering.

11. On this news, Overstock's share price fell $6.68, or 14.97%, to close at $37.92 on March 27, 2018.

12. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

13. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78n(e) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15. Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Overstock's principal executive offices are located within this Judicial District.

16. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17. Plaintiff, as set forth in the attached Certification, acquired Overstock securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18. Defendant Overstock is incorporated in Delaware, with principal executive offices located at 799 West Coliseum Way, Midvale – Utah, 84047. Overstock's shares trade on the NASDAQ under the ticker symbol "OSTK."

19. Defendant Patrick Byrne ("Byrne") founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO").

20. Defendant Jonathan E. Johnson ("Johnson") has served at all relevant times as the President and Director of Medici Ventures, and has served as Overstock's Chairman of the Board of Directors since April 2014.

21. The defendants referenced above in ¶¶ 19-20 are sometimes referred to herein as the "Individual Defendants."

22. The Individual Defendants possessed the power and authority to control the contents of Overstock's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to

and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23. Overstock is an online retailer and purported advancer of blockchain technology. Through its online retail business, the Company offers a broad range of price-competitive products, including furniture, home decor, bedding and bath, housewares, and jewelry and watches, among other products.

24. In late 2014, the Company formed a wholly-owned subsidiary, Medici Ventures, as part of its initiative to develop and advance blockchain technology. Medici oversees a portfolio of blockchain technology and fintech businesses, which includes tZERO.

### Materially False and Misleading Statements Issued During the Class Period

25. The Class Period begins on August 3, 2017, when Overstock held an earnings call with analysts and investors to discuss the Company's financial results for the second quarter of 2017 ("Q2 2017"). During the Q2 2017 call, in response to an investor question, Defendant Byrne stated:

> We have seen a material change, in part because of everything in the news it spiked and then it settled back down to about $50,000 per week, and we have changed our strategy on accumulating Bitcoin. We've gone from keeping 10% of what's spent with Bitcoin to keeping 50%. In Bitcoin, we just got board approval to keep 50% of what is spent in Bitcoin or in other cryptosecurities. I mean we can keep it either in Bitcoin or in some assortment of cryptosecurities, so you'll see a portfolio emerge there. We've had some good luck with some of our -- we've been storing some coins from counterparty for a couple of years and they've grown nicely. ***Anyway, we have some nice gains in the coin department.***
>
> (Emphasis added.)

26. Additionally, while discussing Symbiont, a block chain technology company that Overstock, through Medici, invested in, Defendant Byrne advised:

[Symbiont is] [j]ust a great firm. I know the people well, Caitlin Long from Morgan Stanley, one of the real theorists and big minds in the blockchain space is over there. And a good firm, *there's really 4 significant firms I think of in the "blockchain meets capital market" space: tZERO*, Symbiont, R3 and Digital Assets, *I think that Symbiont and tZERO have been making real honest-to-God progress at commercial products*. You'll see that Symbiont has a deal with Delaware, where they can start doing blockchain corporate registration. I think *these are the 2 firms that are getting things done in the world of "blockchain meets capital markets"* and it's nice that we're working together and we own a little stake in them.

\*\*\*

I'll add one comment on that. On the subject of cryptocurrencies, all coins, not just Bitcoin, I think I should mention that we're days away, I think, from a significant announcement in that regard, a highly significant announcement, I think it'll probably get global attention, actually. So, it's a good question, deserved an honest answer, and the honest answer is I think we're going to do something very significant in the days ahead you'll be reading about. I mean like next week.

(Emphases added.)

27. Defendant Johnson stated during the Q2 2017 call:

Yes, I think it is a big deal. Something that the Medici development team was very excited about. *It was their idea and they're excited about participating. We think it's going to be good for cryptocurrencies, in general, and we think it's going to be great for Overstock.*

(Emphasis added.)

28. In response to a question about the value of blockchain technology for Overstock, Defendant Johnson advised:

*First, I'll say we do think blockchain technology is revolutionary.* What the Internet did for the nearly free and nearly frictionless transfer of information, we think blockchain technology will do for nearly free and nearly frictionless transfer of assets. And assets includes currency, it includes identity, it includes stocks, equity, it includes a large -- you can define assets broadly. *We think that blockchain technology will change the world* as much or more than Internet. *And being at the front of it and giving a good look at the companies that are changing the world, we think it's a great value to Overstock's shareholders.* As far as divesting or raising capital into Medici, we will be looking over the next several

7

months at raising capital. We're not looking at divesting any kind of spinoff. We'd want to do it in a way that's tax advantageous to our shareholders and that, we have not held Medici long enough to do that in such a way, but we are looking at raising money, and hope to be able to raise money in the next several quarters.

(Emphases added.)

29. On October 25, 2017, Defendants confirmed to CNBC.com that Overstock's subsidiary, tZERO, planned to raise up to "$500 million" for an "initial coin offering," which consisted of selling new digital coins for projects based on the blockchain technology of the digital currencies Bitcoin and Ethereum.

30. On December 18, 2017, Overstock announced that tZERO was engaging in a $250 million coin offering.

31. The statements referenced in ¶¶ 25-30 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Overstock's coin offering was highly problematic and potentially illegal; (ii) the Company's Medici business was hemorrhaging money; and (iii) as a result of the foregoing, Overstock's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

32. On March 1, 2018, Overstock announced that the SEC had requested information about its initial coin offering. The Company's filing with the SEC, attached as Exhibit 99.1 to Form 8-K, stated in relevant part:

> In February 2018, the Division of Enforcement of the SEC informed the Company that it is conducting an investigation in the matter Re: Overstock.com, Inc. (NY-9777) and requested that the Company voluntarily provide certain documents related to the Offering and the Tokens in connection with its investigation. The Company is in the process of responding to this document request and will cooperate with the SEC in connection with its investigation.

33. On this news, Overstock's share price fell $2.65, or 4.38%, to close at $57.75 on March 1, 2018.

34. On March 15, 2018, post-market, the Company filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017. In the 2017 10-K, the Company provided an update on the SEC probe, stating in relevant part:

> In February 2018, the Division of Enforcement of the SEC informed tZERO and subsequently informed us that it is conducting an investigation and requested that we and our affiliates, including Medici Ventures and tZERO voluntarily provide certain information and documents related to tZERO and the tZERO security token offering in connection with its investigation. We are in the process of responding to these document requests and intend to cooperate fully with the SEC in connection with its investigation, which will require the time and attention of tZERO and our personnel, and may have an adverse effect on our ability to focus attention on our businesses and our ability to raise capital. In addition, the investigation could result in a delay of the tZERO security token offering, negative publicity for tZERO or us, and may have a material adverse effect on us or on the current and future business ventures of tzero.

35. On this news, Overstock's share price fell $2.50, or 5.18%, to close at $45.70 on March 16, 2018.

36. Then, on March 26, 2018, post-market, Overstock announced that it planned to offer 4,000,000 shares of its common stock in an underwritten public offering.

37. On this news, Overstock's share price fell $6.68, or 14.97%, to close at $37.92 on March 27, 2018.

38. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Overstock securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Overstock securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Overstock or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Overstock ;

- whether the Individual Defendants caused Overstock to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Overstock securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Overstock securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Overstock securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Overstock securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Overstock securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Overstock securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Overstock's finances and business prospects.

52. By virtue of their positions at Overstock, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew

or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Overstock, the Individual Defendants had knowledge of the details of Overstock 's internal affairs.

54. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Overstock. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Overstock's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Overstock securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Overstock's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Overstock securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

55. During the Class Period, Overstock securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Overstock

securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Overstock securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Overstock securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of Overstock, and conducted and participated, directly and indirectly, in the conduct of Overstock's business affairs. Because of their senior positions, they knew the adverse

non-public information about Overstock's misstatement of income and expenses and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Overstock's financial condition and results of operations, and to correct promptly any public statements issued by Overstock which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Overstock disseminated in the marketplace during the Class Period concerning Overstock's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Overstock to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Overstock within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Overstock securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Overstock.  By reason of their senior management positions and/or being directors of Overstock , each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Overstock  to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Overstock and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Overstock.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 6, 2018

Respectfully submitted,

**PETERS | SCOFIELD**
*A Professional Corporation*

/s/ David W. Scofield
DAVID W. SCOFIELD

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*